UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MICHAEL CRIM,<br><br>        Petitioner,<br><br>  v.<br><br>MICHAEL L. BENOV, Warden,<br><br>        Respondent. | 1:10-cv-01600-OWW-JLT HC<br><br>AMENDED FINDINGS AND RECOMMENDATIONS TO GRANT RESPONDENT'S MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS (Doc. 9)<br><br>ORDER REQUIRING OBJECTIONS TO BE FILED WITHIN TWENTY DAYS<br><br>ORDER DENYING MOTION FOR DEFAULT JUDGMENT (Doc. 12) |

Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**PROCEDURAL HISTORY**

Petitioner filed the instant petition on November 20, 2008, alleging that the United States Bureau of Prisons ("BOP") is not in compliance with the Second Chance Act of 2007, 42 U.S.C. § 17541, because it failed to formulate incentives for participation in programs that would maximize the amount of time he is placed in a Residential Re-Entry Center ("RRC") for the final portion of his sentence. (Doc. 1, p. 3; Doc. 13, p. 2).

On November 18, 2010, Respondent filed the instant motion to dismiss, contending that, pursuant to Fed. R. Civ. P. 12(b)(6), Petitioner failed to state a claim upon which relief can be

1  granted because the Second Chance Act is left to the discretion of prison officials and that prison
2  officials have not abused that discretion. (Doc. 9). On November 29, 2010, Petitioner filed his
3  opposition to the motion to dismiss. (Doc. 13). On that same date, Petitioner filed a motion for
4  entry of default judgment. (Doc. 12). Petitioner also filed, on December 6, 2010, additional legal
5  authority in support of his opposition. (Doc. 14).

## FACTUAL HISTORY

At the time of filing of the petition, Petitioner was in the custody of the BOP serving a 96 month prison sentence at the minimum security Prison Camp at the Taft Correction Institution ("TCI"), in Taft, California, for a violation of one count of 18 U.S.C. § 371, conspiracy to defraud the United States, and for a violation of one count of 26 U.S.C. § 7212(a), corruptly endeavoring to interfere with the administration of the Internal Revenue laws. (Doc. 1, p. 2).

On July 8, 2010, Petitioner made a request to be given information on what "skills development programs" were being provided for his participation under the Second Chance Act of 2007. (Doc. 10, Ex. A). Petitioner was provided with a list of programs and activities available to him at the prison. (Id.). Apparently dissatisfied with TCI's response, on July 15, 2010, Petitioner filed a second request asking for an explanation as to "what skills development programs are available and the incentives that go along with it." (Doc. 10, Ex. B). Petitioner appears to have specifically wanted to know what programs he had to participate in to receive the maximum twelve-month RRC placement incentive provided for in the Second Chance Act. (Id.). Petitioner was advised that the BOP had not yet provided final direction regarding pre-release programing and that the prison staff would provide that information when it was received from the BOP. (Id.). On July 22, 2010, Petitioner made another Request for Administrative Remedy. (Doc. 10, Ex. C). Petitioner was notified on July 28, 2010 that the Second Chance Act does not indicate any specific program which would qualify an inmate for the maximum allowable period in a RRC. (Doc. 10, Ex. D).

## DISCUSSION

A. Jurisdiction

Relief by way of a writ of habeas corpus extends to a person in custody under the authority of the United States. See 28 U.S.C. § 2241. While a federal prisoner who wishes to challenge the

validity or constitutionality of his conviction must bring a petition for writ of habeas corpus under 28 U.S.C. § 2255, a petitioner challenging the manner, location, or conditions of that sentence's execution must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241.  See, e.g., United States v. Giddings, 740 F.2d 770, 772 (9th Cir.1984); Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990).  To receive relief under 28 U.S.C. § 2241 a petitioner in federal custody must show that his sentence is being executed in an illegal, but not necessarily unconstitutional, manner.  See, e.g., Clark v. Floyd, 80 F.3d 371, 372, 374 (9th Cir. 1995) (contending time spent in state custody should be credited toward federal custody); Jalili, 925 F.2d at 893-94 (asserting petitioner should be housed at a community treatment center); Barden, 921 F.2d at 479 (arguing Bureau of Prisons erred in determining whether petitioner could receive credit for time spent in state custody); Brown, 610 F.2d at 677 (challenging content of inaccurate pre-sentence report used to deny parol).

Petitioner's claim arises from an alleged failure by the BOP to properly interpret and apply federal law, i.e., the Second Chance Act, as it relates to Petitioner's qualification for and placement in an RRC.  Thus, Petitioner is challenging the execution of his sentence, which is maintainable only in a habeas corpus proceeding.  Tucker v. Carlson, 925 F.2d 330, 331 (9th Cir. 1990).  Furthermore, because Petitioner is challenging the execution of his sentence at Taft Correctional Institution ("TCI"), and TCI is within the Eastern District of California, Fresno Division, this Court has jurisdiction over the petition.  See Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990).

B.  Procedural Grounds for Motion to Dismiss

Respondent has filed a motion to dismiss the petition for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. Proc. 12(b)(6).  (Doc. 9).  Along with the motion, Respondent has submitted the Declarations of Lorena Matei ("Matei Dec."), an attorney for Respondent, who authenticates a series of documents submitted by Respondent in support of the motion to dismiss, and of Dale Patrick ("Patrick Dec."), Administrative Remedy Coordinator at TCI, who authenticates appended documents as well as declaring, under oath, various facts submitted in support of the motion to dismiss.  (Doc. 10, Matei Dec., Patrick Dec.).  Reading Respondent's arguments and submitted exhibits, it is clear that Respondent is arguing the merits, or lack thereof, of Petitioner's claim regarding Respondent's interpretation and application of the Second Chance Act,

and not merely raising a procedural deficiency such as lack federal jurisdiction or failure to state a claim. This necessarily raises the question whether, procedurally, a motion to dismiss pursuant to Rule 12(b)(6) is the appropriate legal vehicle for challenging the merits of the petition.

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.[1] The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same). Thus, a respondent can file a motion to dismiss after the Court orders a response, and the Court should use Rule 4 standards to review the motion. See Hillery, 533 F. Supp. at 1194 & n. 12.

As discussed above, the Rules Governing Section 2254 Cases do not expressly provide for motion practice; rather, such motion practice must be inferred from the structure of the rules themselves. Hillery, 533 F.Supp. at 1195. For example, Rule 11 provides as follows:

> The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.

Rule 11 of the Rules Governing Section 2254 Cases. (Emphasis supplied). Because of the peculiar and unique nature of habeas proceedings, as a general rule, neither Rule 12(b)(6) nor summary judgment motions under Rule 56 are particularly appropriate. Given the nature of a habeas corpus petition, Anderson v. Butler, 886 F.2d 111, 113 (5th Cir. 1989) (modern habeas corpus procedure has the same function as an ordinary appeal); O'Neal v. McAnnich, 513 U.S. 440, 442, 115 S.Ct. 992

---

[1] The Rules Governing Section 2254 Cases may be applied to petitions for writ of habeas corpus other than those brought under § 2254 at the Court's discretion. See, Rule 1 of the Rules Governing Section 2254 Cases. Civil Rule 81(a)(2) provides that the rules are "applicable to proceedings for . . . habeas corpus . . . to the extent that the practice in such proceedings is not set forth in statutes of the United States and has heretofore conformed to the practice of civil actions." Fed. R. Civ. P 81(a)(2).

(1995) (federal court's function in habeas corpus proceedings is to "review errors in state criminal trials"(emphasis omitted)), motions for summary judgment are unnecessary because petitions may be decided immediately by the Court following submission of the pleadings provided no material issues of fact exist.  See, 1 J. Liebman, *Federal Habeas Corpus Practice and Procedure,* § 17.3 (1988) (The habeas corpus statute authorizes -- indeed, it seems to *require* -- the court treat the petition itself as the equivalent of a petitioner initiated summary judgment motion).

Similarly, a Rule 12(b)(6) motion attacking the sufficiency of the pleading in the petition does not comfortably fit within the habeas landscape either. *In filing a response in the form of a Rule 12(b)(6) motion rather than an Answer, it appears to the Court that Respondent does not fully appreciate the unique requirements of habeas proceedings.*[2]  Nevertheless, the Court is still of the opinion that denying Respondent's motion to dismiss solely on narrow procedural grounds and then requiring Respondent to file an answer that would, in all likelihood, raise the same issues and rely on the same evidence, would be an inefficient use of the parties' time as well as the Court's resources. Instead, the Court has the inherent power under the Rules Governing Section 2254 Cases to construe Respondent's motion to dismiss as an answer on the merits and Petitioner's opposition to the motion to dismiss as a traverse.  So construing the filings, the Court would then be in a position to rule on the merits of the petition without the need for further development of the record or additional briefing.

Such an approach, while cumbersome, is nevertheless not entirely inconsistent with the Rules Governing Section 2254 Cases.  Historically, habeas practice provided only two dispositions for petitions: summary dismissal or a full hearing.  Hillery, 533 F.Supp. at 1196.  However, the drafters of the present Rules Governing Section 2254 cases believed that, in some instances, an intermediate

---

[2] The Court notes that, on at least three prior occasions in these chambers, Respondent's counsel has chosen, in lieu of filing traditional answers, to file motions to dismiss under Rule 12(b)(6), that challenge the merits of the inmates' petitions. See case nos. 1:09-cv-00831-AWI-JLT; 1:09-cv-00183-JLT; and 1:09-cv-01753-AWI-JLT.  In each of those cases, as in this case, the Court has attempted to tactfully dissuade Respondent's counsel from filing a merits answer disguised as a motion to dismiss.  See id.  Unfortunately, it does not appear that Respondent's counsel has received the message.  Therefore, the Court will be less circumspect in its approach here by suggesting that, if counsel continues to file motions to dismiss that are, in reality, answers, the Court will, at some point, deny the motions on procedural grounds, thus requiring counsel to re-file the same arguments as an answer.  In the future, counsel could save everyone the unnecessary additional work involved in such a response by simply complying the guidelines set forth above and filing the response as an answer, not a motion to dismiss.

process, through the device of an expanded record under Rule 7 might be advantageous. Id. "The purpose [of Rule 7] is to enable the judge to dispose of some habeas petitions not dismissed on the pleadings, without the time and expense required for an evidentiary hearing...Authorizing expansion of the record will, hopefully, eliminate some unnecessary hearings." Advisory Committee Note to Rule 7.

In effect, Respondent has sought to expand the record beyond the petition by attaching the Patrick and Matei Declarations and appended documents to those Declarations that bear upon the factual context within which this Court must apply the provisions of the Second Chance Act. In his opposition to the motion to dismiss, Petitioner does not dispute the authenticity of these documents, nor of the facts alleged therein; rather, he argues that if the motion to dismiss is based upon procedural defects, he should be allowed to amend to cure those defects.

From all of these documents and arguments, no disputed issues of fact have emerged; rather, both Respondent's and Petitioner's arguments are entirely legal ones. By filing this motion to dismiss, Respondent has clearly evidenced its belief that the present record, as presently constituted, is sufficient for this Court to determine the merits of the case. Petitioner, by failing to contest the facts alleged in the declarations and by declining to challenge the procedural posture of this case, apparently does not object to Respondent's implicit request that the merits of the petition be decided in the context of this motion to dismiss. Under those circumstances, the Court agrees that there are no controverted issues of fact, that the present record is sufficient as presently constituted, and that no additional evidence is required for the Court to reach a decision on the merits of the petition.

Accordingly, the Court will construe Respondent's motion to dismiss as an answer on the merits and Petitioner's opposition to the motion to dismiss as a Traverse. Having resolved that procedural tangle, hopefully for the last time, the Court now turns to the issues raised in the motion to dismiss.

C. Petitioner's Claims Are Without Merit.

1. Statutory Framework of the Second Chance Act.

The BOP has the authority, under 18 U.S.C. § 3621(b), to designate the location of an inmate's imprisonment. The BOP's policy prior to December 13, 2002, was to exercise its discretion

in allowing prisoners to serve part of all of their imprisonment in an RRC. See Rodriguez v. Smith, 541 F.3d 1180, 1182 (9th Cir. 2008). The Department of Justice Office of Legal Counsel ended that practice by issuing a legal opinion that § 3621(b) did not authorize inmate placements in an RRC for an entire term because it did not constitute imprisonment. See id.

The BOP changed its policy on December 20, 2002, by limiting an inmate's eligibility for placement in an RRC to six months or to the final ten percent of his sentence, whichever was shorter. See Rodriguez, 541 F.3d at 1182. The First and Eighth Circuits invalidated that policy because it failed to recognize the BOP's discretion to transfer an inmate to an RRC at any time, as provided in § 3621. See id. at 1182-1183. In response, the BOP decided to "exercise its discretion categorically to limit inmate's community confinement to the last ten percent of the prison sentence being served, not to exceed six months." See id. at 1183 (*quoting* 69 Fed. Reg. 51213). These rules were published at 28 C.F.R. §§ 570.20 and 570.21, and became effective on February 14, 2005. See id.

On April 9, 2008, the President signed into law the "Second Chance Act" ("SCA"), a bill which amends the text of 18 U.S.C. § 3624(c) and adds 42 U.S.C. §§ 17501-17555. The updated text of § 3624(c)(1) authorizes the BOP to consider placing inmates in RRCs for up to the final twelve months of their sentences, rather than merely the final six months. Section 3624(c)(4) also clarifies that nothing in § 3624 "shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under § 3621." 18 U.S.C. § 3624(c)(4).

On April 14, 2008, in response to the new legislation, the BOP issued a memorandum for Chief Executive Officers regarding "Pre-Release Residential Reentry Center Placements Following the Second Chance Act of 2007" (the "April 14 Memorandum"). The April 14 Memorandum served as the BOP's new interim policy and it explicitly rescinded 28 C.F.R. §§ 570.20 and 570.21.

Under the new policy, inmates were to be "individually considered for pre-release RRC placement using the following five factor criteria from 18 U.S.C. § 3621(b), which are as follows:

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence

        (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

        (B) recommending a type of penal or correctional facility as appropriate; and

    (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b). The memorandum further provided that the BOP must review inmates for pre-release placement seventeen to nineteen months before their projected release date. Id.

    On September 4, 2008, the Ninth Circuit decided Rodriguez, holding that 28 C.F.R. §§ 570.20 and 570.21 were invalid because they conflicted with the Congressional intent of § 3621(b) that inmates be considered for placement in or transfer to an RRC based on the five factors contained in § 3621(b). See Rodriguez, 541 F.3d at 1187. The BOP therefore could not reference 28 C.F.R. §§ 570.20 and 570.21 in considering an inmate for RRC placement. Thus, under Rodriguez, the BOP has discretion to transfer an inmate to an RRC at any time. However, Rodriguez does not require the BOP, once it applies the factors of § 3621(b), to grant an inmate's request for immediate transfer to an RRC, nor does it require the BOP to afford an inmate any particular amount of time in an RRC placement. See Berry v. Sanders, 2009 WL 789890, at *6-*7 (C.D. Cal. March 20, 2009); Guss v. Sanders, 2009 WL 5196153, *4 (C.D. Cal. Dec. 29, 2009).

    Finally, on November 14, 2008, the BOP, in a memorandum from the Assistant Director and General Counsel of the BOP entitled "Inmate Requests for Transfer to Residential Reentry Centers," issued guidance to staff for considering and responding to inmate requests for routine transfer to RRC's. 73 Fed. Reg. 62440-01 (Oct. 21, 2008)(codified at C.F.R. §§ 570.2-.22)(the "November 14 Memorandum"). After noting that "[i]nmates are legally eligible to be placed in an RRC at any time during their prison sentence[s]," the November 14 Memorandum provides that "inmate requests for RRC placement must receive individualized consideration," and that, when considering a transfer, "prior to the pre-release time frame of 12-months from release, staff must individually consider the request, just as they would any other request for lower security transfer." Id.. In rendering its decision, staff must utilize the five factors outlined in § 3621(b), and staff "cannot, therefore, automatically deny an inmate's request for transfer to an RRC. Rather, inmate requests for RRC

placement must receive individualized consideration." (Id.) Moreover, the November 14 Memorandum explains that "[t]elling an inmate that he/she is ineligible for RRC placement is the same as automatically denying the inmate from even being considered for such placement, and is not in accord with Bureau policy." The BOP may initiate such transfers at any time, and if an inmate requests a transfer prior to the pre-release transfer time-frame, the review will occur "in conjunction with the [inmate's] next scheduled Program Review." (Id.). However, as with the April 14 Memorandum, the November 14 Memorandum advises BOP staff that "a RRC placement beyond six months should only occur when there are unusual or extraordinary circumstances justifying such placement, and the Regional Director concurs."

Section 17541 of 42 U.S.C., also created by the SCA, provides, inter alia, that the Attorney General and the Director of BOP "shall, subject to the availability of appropriations, conduct the following activities to establish a Federal prisoner reentry initiative:

> (1) The establishment of a Federal prisoner reentry strategy to help prepare prisoners for release and successful reintegration into the community, including, at a minimum, that the Bureau of Prisons–
>
> (A) assess each prisoner's skill level (including academic, vocational, health, cognitive, interpersonal, daily living, and related reentry skills) at the beginning of the term of imprisonment of that prisoner to identify any areas in need of improvement prior to reentry;
>
> (B) generate a skills development plan for each prisoner to monitor skills enhancement and reentry readiness throughout incarceration;
>
> ( C) determine program assignments for prisoners based on the areas of need identified through the assessment described in subparagraph (A);
>
> (D) ensure that priority is given to the reentry needs of high-risk populations, such as sex offenders, career criminals, and prisoners with mental health problems;
>
> (E) coordinate and collaborate with other Federal agencies and with State, Tribal, and local criminal justice agencies, community-based organizations, and faith-based organizations to help effectuate a seamless reintegration of prisoners into

        communities;

        (F) collect information about a prisoner's family relationships, parental responsibilities, and contacts with children to help prisoners maintain important familial relationships and support systems during incarceration and after release from custody; and

        (G) provide incentives for prisoner participation in skills development programs.

    (2) Incentives for a prisoner who participates in reentry and skills development programs which may, at the discretion of the Director, include–

        (A) the maximum allowable period in a community confinement facility;

        (B) such other incentives as the Director considers appropriate (not including a reduction of the term of imprisonment).

42 U.S.C. § 17541(1), (2).

    Subsequently, various legal challenges were raised against the SCA and, more specifically, to the BOP's implementation of the SCA through its two memoranda. The most prevalent challenge has been to the BOP's statement in both memoranda, that most inmates' rehabilitation needs can be met with RRC placements that do not exceed six months and that any placement exceeding that limit requires the approval of the Regional Director of the BOP. In <u>Sacora v. Thomas</u>, 628 F.3d 1059 (9th Cir. 2010), the Ninth Circuit upheld that BOP's policies as legal and constitutional implementations of the changes required by the SCA. Specifically, the Ninth Circuit held that the BOP's policies, as expressed in its two memoranda and subsequent program statements, reasonably implemented the changes in the SCA, that the BOP's policies were not arbitrary and capricious, and that the policies were not substantive rules subject to the Administrative Procedure Act's notice-and-comment requirements. <u>Id</u>. at 1066-1070. This Court is, of course, bound by Ninth Circuit's views on this subject.

        2.  <u>Petitioner Has Failed To Show That Respondent Has Violated The SCA</u>.

    Petitioner, however, does not directly challenge the BOP's purported "limit" or "cap" of six months on RRC placement; rather, he challenges the BOP's purported failure to implement "incentives" in the form of various in-house prisoner programs that Petitioner contends are mandated

E. D. California

10

by SCA, and especially by 42 U.S.C. § 17541.  Petitioner relies upon Kruger v. Martinez, 665 F.Supp.2d 477 (M.D. Penn. 2009), which, Petitioner contends, recognizes that § 17541 "clearly requires establishment of an incentive program rewarding a prisoner's participation in skills development programs, even though that language vests discretion with the BOP concerning the type of incentives to award."  (Doc. 11, Matei Dec., p. 5).  In other words, Petitioner construes § 17541 to require that the BOP expressly identify "incentive" programs that would reward Petitioner for participation in them in ways that would lead to an earlier or more lengthy RRC placement, including, but not limited to, a twelve-month RRC placement.  (Id.).

The Court does not agree with Petitioner's construction of the SCA.  In Krueger, an inmate filed a habeas corpus petition challenging the BOP's decision to place him in an RRC for only five to six months before his release date, rather than the full twelve months permissible under the SCA.  The District Court concluded that the BOP's two memoranda "add additional hurdles that find no support in the text of the SCA" by "depriving the initial decision maker of the ability to recommend placement unfettered by a presumptive six month cap" that "significantly reduces the possibility of a truly individualized review that objectively determines the duration required 'to provide the greatest likelihood of successful reintegration into the community.'" Krueger, 665 F.Supp.2d at 483.  In so ruling, the Court ordered that the BOP re-evaluate the inmate in light of the statutory requirements to determine if he was eligible for an RRC placement longer than six months.  Id.

However, the District Court did not stop there.  It went on to construe § 16541 as creating a twelve-month incentive that was separate and distinct from the twelve-month maximum RRC placement provided pursuant to 18 U.S.C. § 3624( c):

> ...[I]t is clear to this Court that Congress intended that the BOP create incentives for a prisoner's participation in skills development program,...and that one of those incentives may be a 12-month placement in an RRC facility.  Moreover, this consideration of incentives was clearly intended to be separate and distinct from the consideration under 18 U.S.C. § 3624( c) otherwise it would have been superfluous for Congress to have created an entirely distinct statutory framework.  Because it is unclear whether the BOP ever separately considered a full RRC placement as an incentive under § 17541(a)(1)(G) for Krueger's skills development and educational achievements, the court will order Respondent to consider Krueger, in good faith, for a full 12-month RRC placement as an incentive under § 17541 separately from its determination under 18 U.S.C. § 3624( c).

Id. at 486.

1    The Court disagrees with the Pennsylvania District Court's interpretation of § 17541 as
2 creating a twelve-month placement scheme separate from 18 U.S.C. § 3624.  First, this Court is not
3 bound by the Pennsylvania court's construction.  Second, a review of cases decided subsequent to
4 Krueger shows that no other district court has followed such an extreme interpretation of the SCA;
5 indeed Krueger has been rejected consistently by the district courts in its own district of the Middle
6 District of Pennsylvania.  See, e.g., Ogman v. Ebbert, 2010 WL 4922889 (M.D.Pa. Nov. 12, 2010);
7 Collins v. Martinez, 2010 WL 4272923 (M.D.Pa. Oct. 25, 2010); Berlin v. Bledsoe, 2010 WL
8 3528571 (M.D.Pa. Sept. 8, 2010); Ramos v. Holt, 2010 WL 2471707 (M.D.Pa. May 5, 2010);
9 McDonald v. Obama, 2010 WL 1526443 (M.D.Pa. March 14, 2010); Wires v. Bledsoe, 2010 WL
10 427759 (M.D. Pa. Feb. 3, 2010).  These cases rely in part upon the Eighth Circuit's precedential
11 ruling in Miller v. Whitehead, 527 F.3d 752, 757-758 (8th Cir. 2008), which held, inter alia, that the
12 BOP's policy of requiring a heightened standard for RRC commitments longer than six months did
13 not conflict with the SCA requirement of an individual determination for each inmate.

14    Moreover, Krueger has been widely rejected in other districts as well.  See, e.g., Tanis v.
15 Shartle, 2010 WL 3271735 (N.D. Ohio Aug. 17, 2010); Vicaretti v. Zeigler, 2010 WL 4876608
16 (N.D. W.Va. Oct. 27, 2010); Bell v. Zych, 2010 WL 5114504 (E.D. Mich. Nov. 16, 2010); Crabbe v.
17 Davis, 2010 WL 2998763 (D. Colo. July 9, 2010); O'Hara v. Rios, 2009 WL 3164724 (D. Minn.
18 Sept. 28, 2009); Smith v. Sanders, 2009 WL 2900317 (C.D. Cal. Sept. 3, 2009); Yanucci v.
19 Stransberry, 2009 WL 2421546 (E.D. Va. July 28, 2009); McGee v. Thomas, 2009 WL 2182385 (D.
20 Or. July 22, 2009); Sessel v. Outlaw, 2009 WL 1850331 (E.D. Ark. June 25, 2009); Snyder v.
21 Angelini, 2008 WL 4773142 (E.D.N.Y. Oct. 27, 2008).

22    Third, and most importantly, in this Court's view, the Pennsylvania court's interpretation is
23 flawed.  The majority view, represented by the cases cited in the preceding paragraph, "holds that the
24 Bureau of Prisons' requirement of regional director approval, and the agency's state view that many
25 inmates can have their needs met [sic] RRC placements of 180 days or less, do not violate the Act."
26 E.g., Rodriguez v. Bledsoe, 2010 WL 2471740, *8 (M.D. Pa. May 7, 2010); see also Miller, 527
27 F.3d at 755-758.  The basis for such a view is the discretionary nature of the obligations, powers, and
28 duties conferred on the BOP by the SCA.  Id.  "While the [SCA] authorizes 12-month RRC

placements by the Bureau of Prisons, it does not mandate them.  Instead, the [SCA] expressly and repeatedly emphasizes that the Bureau of Prisons retains full discretion in identifying when and how inmates are places at RRCs."  Rosario v. Scism, 20111 WL 398200, *8 (M.D.Pa. Jan. 20, 2011). The essence of the reforms embodied in the SCA clearly is to require an individualized assessment of each inmate using the statutorily prescribed criteria.  See April 14 Memorandum; Sacora, 628 F.3d at 1068.  Although § 17541(a)(1)(G) appears to mandate that the BOP establish a reentry initiative that will "provide incentives for prisoner participation in skills development programs," the form, manner, and scope of such incentives is left entirely to the discretion of the BOP.

In this case, Dale Patrick, the Administrative Remedy Coordinator for TCI, has declared under oath that TCI, as a contract facility, accomplishes the goals contained in the BOP's Skills Development Initiative through its own series of Program Reviews and Education Reviews, as incorporated in Program Statement 5322.12.  (Patrick Dec., p. 1).  The Program Statement provides, in part, the policies and procedures of TCI regarding the "program needs" of TCI's inmates.  (Id.). Petitioner has not established that the Program Statement violates or fails to satisfy the SCA in any way.

Moreover, when Petitioner requested a list of "incentive" programs pursuant to § 17541, TCI responded by providing Petitioner with a list of programs available at the institution.  (Patrick Dec., p. 37-38).  Petitioner dismisses this list as insufficient because the programs contained in the list are not expressly designated as "skills development" programs under the SCA nor are they expressly designated as "incentives" under § 17541.  (Patrick Dec., p. 35).

Apparently, under Petitioner's reading of the SCA, it is not enough for the BOP to merely have skills development programs or incentive programs for its inmates, or that the BOP fairly and fully consider an inmate's participation in such programs when the inmate is given the individualized RRC assessment mandated by the SCA.  Rather, under Petitioner's view, the BOP must expressly designate the skills development and incentive programs as such in order to satisfy the SCA's requirements.  This, however, exalts form over substance.

The SCA requires only that Respondent develop a reentry initiative that includes skills development programs and incentives for inmates to participate in them.  Nothing in the SCA

defines what those incentives must be or in what form they may be offered.  Here, the record supports a conclusion that TCI has complied with the SCA by providing Petitioner a list of skills development programs that, if completed successfully, may increase the likelihood that Petitioner will be considered for the maximum RRC placement to which he is eligible, given the specific facts of his background, criminal history, conduct in prison, etc., and in the discharge of the BOP's statutory discretion regarding RRC placements of its inmates.  The SCA does not mandate that the BOP quantify the impact each prison program will have on an individual inmate's chances of receiving maximum RRC placement.  In the Court's view, it is sufficient for SCA's purposes that such programs are offered and that participation in and completion of such programs are factors that will be duly considered by Respondent when Petitioner's individualized assessment takes place.  If Petitioner is demanding that BOP provide a course of programs that Petitioner can complete that will *ensure* that he receives the maximum twelve-month RRC placement, that is a demand that is not supported by any reasonable construction of the SCA, and, indeed, conflicts with the discretion Congress vested in the BOP for making such individualized assessments.

      Nor does the Court's reading of § 17541 support Petitioner's view that it creates a second 12-month RRC placement alternative in addition to the one already contained in 18 U.S.C. § 3624( c).  Recently, the United States Supreme Court reiterated that "courts must presume that a legislature says in a statute what is means and means in a statute what it says there.  When the statutory language is plain, the sole function of the courts–at least where the disposition required by the text is not absurd–is to enforce it according to its terms." Carr v. United States, ___U.S.___, 130 S.Ct. 2229, 2242 (2010).  Similarly, the Ninth Circuit has observed that "our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 951 (9th Cir. 2009).  In assessing the plain meaning of a statute, "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." U.S. v. Gonzalez, 492 F3d 1031, 1041 (9th Cir. 2007).  "[T]he structure and purpose of a statute may also provide guidance in determining the plain meaning of its provisions." Bailey v. Hill, 599 F.3d 976, 980 (9th cir. 2010).

      18 U.S.C. 3624(c) provides that the BOP may place an inmate in RRC for a period of up to

1   twelve months.  However, § 3624(c)(4) also clarifies that nothing in § 3624 "shall be construed to
2   limit or restrict the authority of the Director of the Bureau of Prisons under § 3621." 18 U.S.C. §
3   3624(c)(4).  42 U.S.C. § 17541(a)(2)(A) provides that the BOP must provide incentives "for a
4   prisoner who participates in reentry and skills development programs which may, *at the discretion of*
5   *the Director*, include...(A) the maximum allowable period in a community confinement facility...."
6   42 U.S.C. § 17541(a)(2)(A)(Emphasis supplied).  Nothing in the plain meaning of these two
7   provisions suggests that by enacting § 17521(a)(2)(A), Congress was attempting to create a separate
8   twelve-month RRC placement program distinct from the one already provided in § 3624 (c)(4).
9   Indeed, such a construction of these two provisions makes no sense: If the BOP retains the statutory
10  discretion to individually determine the duration of an inmate's RRC placement up to a maximum of
11  twelve months, it is illogical for Congress to then require the BOP to also offer a separate twelve-
12  month RRC placement as an incentive to the inmate's completion of the skills development
13  programs that, themselves, are to be considered as factors in making an individualized assessment
14  regarding to the duration of the inmate's RRC placement.  It is circular logic that would lead to an
15  absurd result–i.e., that the BOP has to offer a skills development plan that will *guarantee* that an
16  inmate can receive a 12-month RRC placement--and, as such, has absolutely no support in the plain
17  meaning of the two statutes.  The Court declines to adopt such a flawed construction.
18       Based on the foregoing analysis, the Court rejects Petitioner's contention that the BOP has
19  failed to properly implement the SCA because it failed to identify incentives for skills development
20  programs leading to an earlier or more lengthy RRC placement.  Having rejected that argument, little
21  else remains for the Court to consider.  Petitioner does not contend either that he is entitled to an
22  expedited RRC evaluation or, apart from the argument rejected above, that the BOP's present
23  treatment of Petitioner vis-a-vis RRC placement under the SCA is in violation of federal law.
24  Petitioner does not raise a facial challenge to the SCA or to the BOP's two memoranda or TCI's
25  program statements.  Since the only issue raised by Petitioner is, in the Court's view, without merit,
26
27
28

1  Respondent's motion to dismiss should be granted.[3]

2         D.  Petitioner's Motion For Default Judgment.

3         On November 29, 2010, Petitioner filed an application for default judgment. (Doc. 12).
Petitioner's application offers no reason or justification for such a request. However, because the
application was filed shortly after the due date for Respondent's response to the habeas petition, it
appears that Petitioner may have believed that Respondent's response was not timely. This is
incorrect. The Court's September 17, 2010 order requiring Respondent to file a response afforded
Respondent up to and including November 19, 2010 within which to file a response. (Doc. 7).
Respondent filed the response on November 18, 2010. (Doc. 9). Accordingly, the response was
timely.

         Even were that not true, however, an untimely filing by Respondent provides no basis for
entry of a default judgment in a federal habeas proceedings. Even where a respondent is delinquent,
the Court is obligated to hear the case on its merits. Gordon v. Duran, 895 F.2d 610, 612 (9th
Cir.1990); see, also, Bleitner v. Welborn, 15 F.3d 652, 653 (7th Cir. 1994) (respondent's failure to
timely respond to petition does not entitle petitioner to default); United States ex rel. Mattox v. Scott,
507 F.2d 919, 924 (7th Cir. 1974)(holding that default judgment is not an appropriate remedy for a
state's failure to answer a habeas corpus petition); Bermudez v. Reid, 733 F.2d 18 (2nd Cir. 1984).
Accordingly, Petitioner's application for default judgment is denied.

**ORDER**

For the foregoing reasons, the Court HEREBY ORDERS that Petitioner's application for
default judgment (Doc. 12), is DENIED.

**RECOMMENDATION**

For the foregoing reasons, the Court RECOMMENDS that Respondent's Motion to Dismiss
the petition (Doc. 9), be GRANTED.

---

[3] In light of the Court's Recommendation, it is unnecessary to address Respondent's alternative argument that TCI is a private contract facility that is not bound by the BOP's Skills Development Initiative. (Doc. 9, p. 3). The Court notes, however, that such a simplistic argument does not adequately address the more complex question of the extent to which TCI, as a facility that contracts with the BOP to run a federal prison, is subject to the same statutory imperatives of the SCA as is the BOP.

1    This Findings and Recommendations is submitted to the United States District Court Judge
2 assigned to the case pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the
3 Local Rules of Practice for the United States District Court, Eastern District of California.  Within
4 twenty (20) days after being served with a copy of this Findings and Recommendations, any party
5 may file written objections with the Court and serve a copy on all parties.  Such a document should
6 be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the
7 Objections shall be served and filed within ten (10) court days (plus three days if served by mail)
8 after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to
9 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified
10 time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153
11 (9th Cir. 1991).

13 IT IS SO ORDERED.
14 Dated:   **April 29, 2011**                                            **/s/ Jennifer L. Thurston**
                                                                           UNITED STATES MAGISTRATE JUDGE